IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>KIRT SAINILA FILOIALII,<br><br>            Defendant. | Case No. 3:21-cr-00052-JMK<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

Before the Court at Docket 31 is Defendant's Motion to Suppress (the "Motion"). The Motion was referred to the Honorable Magistrate Judge Matthew M. Scoble. At Docket 71, Magistrate Judge Scoble issued his Final Report and Recommendation, in which he recommended that the Motion be denied. Defendant filed objections at Docket 72. The Government did not respond.

The matter now is before this Court pursuant to 28 U.S.C. § 636(b)(1). That statute provides that a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[1] A court is to "make a de novo determination of those portions of the [magistrate judge's] report or specified

---

[1] 28 U.S.C. § 636(b)(1)(C).

proposed findings or recommendations to which objection is made."[2] But as to those topics on which no objections are filed, "[n]either the Constitution nor [28 U.S.C. § 636(b)(1)] requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct."[3]

Defendant raises three objections. The Court has considered the objections on de novo review and finds each to be without merit.

I.  **Defendant's Objection Re: Concession of Probable Cause**

Defendant objects to two statements that imply that Defendant conceded there was probable cause for his arrest. The Initial Report and Recommendation contained the sentence: "This Court, after careful consideration, agrees with Filoialii that there was probable cause to arrest him."[4] Defendant objected at Docket 69, Magistrate Judge Scoble accepted the well-taken objection, and this sentence was removed from the Final Report and Recommendation.[5] This specific objection is moot.

Defendant further objects that the Final Report and Recommendation states that "Mr. Filoialii conceded that similarly-situated victims of domestic violence generally give rise to 'probable cause to make an arrest' when they proffer similar statements."[6]

---

[2] *Id.*
[3] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").
[4] Docket 64 at 20.
[5] Docket 71 at 27.
[6] *Id.* at 20.

United States v. Filoialii                                                                                       Case No. 3:21-cr-00052-JMK
Order Adopting Report and Recommendation                                                            Page 2
Case 3:21-cr-00052-JMK-MMS   Document 78   Filed 01/24/23   Page 2 of 11

Review of the transcript of the Oral Argument held on April 1, 2022, provides that Defense Counsel stated, in relevant part:

> I think what the text message exchange calls into question and you reviewed them again this morning, is whether Mr. Filoialii was the perpetrator, whether he was the person who caused those injuries.
>
> You know, again, I would concede and I think a lot of, you know, Mr. -- the cases Mr. Tran cites go to this kind of issue. I mean, typically if -- without these -- without this text message exchange, she's in there with injuries and she gives a statement. It's often probable cause to make an arrest. I think this text message exchange in the context of the severity of her assault allegations put things in a little bit of a different light.[7]

The Court agrees that Defendant did not cede the probable cause argument in the context of this specific set of factual circumstances. However, the Court also agrees with Magistrate Judge Scoble's characterization of the general concession regarding other non-specific aspects of domestic violence investigations.

The Court does not find either of the contested statements to be error.

## II. Defendant's Objection to the Finding of Probable Cause

Defendant objects to the finding that probable cause existed for his arrest on four separate, but interrelated grounds.[8] The core of this objection requests this Court to isolate a series of affectionate texts messages sent between D.T. and the Defendant as

---

[7] Docket 53 at 18–19.
[8] Docket 72 at 4–7.

*United States v. Filoialii*  Case No. 3:21-cr-00052-JMK
Order Adopting Report and Recommendation  Page 3
Case 3:21-cr-00052-JMK-MMS   Document 78   Filed 01/24/23   Page 3 of 11

countervailing to Magistrate Judge Scoble's finding of probable cause. However, probable cause is not determined by isolated facts, but rather the totality of the circumstances.[9]

        While extensively summarized by the parties, the Court finds it necessary to re-summarize the text messages at issue for clarity in its analysis. The messages begin when D.T. informs Defendant her arm is broken and requires surgery.[10] She also expresses wanting Defendant to visit her in the hospital, but not with her mother present, because "kc mentioned you[r] name and I didn't want my mom' [put] the 2 together."[11] Defendant accuses D.T. of "snitching" and if she "told that rat fuck that's pretty telling on me because you know he's gonna call the cops again."[12] She denies telling "kc," but Defendant demands "Why did you tell him[?]"[13] In response, she consoles him that she hasn't "this time" and that she "didn't know [kc] was like that."[14] Defendant responds "This time huh[.] Have you talked to him today[?]"; to which D.T. answers, "No[.] Haven't talked to nobody, and Defendant instructs "I told you about that bitch shit[.]"[15] D.T. responds with declarations of loyalty and "your my everything."[16]

---

[9] *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *United States v. Noster*, 590 F.3d 624, 629–30 (9th Cir. 2009) ([P] probable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime.).
[10] Docket 31-2 at 1.
[11] *Id.* at 2.
[12] *Id.* at 3.
[13] *Id.* at 4.
[14] *Id.*
[15] *Id.* at 5.
[16] *Id.* at 5–7.

*United States v. Filoialii*        Case No. 3:21-cr-00052-JMK
Order Adopting Report and Recommendation        Page 4
Case 3:21-cr-00052-JMK-MMS   Document 78   Filed 01/24/23   Page 4 of 11

Approximately four hours later, Defendant inquires if D.T. is still at the hospital.[17] Defendant and D.T express loneliness and the desire to be together, along with a plea from D.T. that "we got to be better than this."[18] She asks Defendant to call her and when he does not, ninety minutes later, she says she loves him and again asks him to call her.[19] Defendant texts "Your acting weird"; and she questions what "kind of support is that."[20] He responds "What I'm on my way[.] What are you talking about[?]" and she requests a soda and gives him directions to her hospital room.[21] It is these specific messages exchanged between 12:14 AM and 3:20 AM that Defendant requests the Court to reassess.

After Defendant does not arrive at the hospital or answer her seven text messages, D.T. communicates that she is leaving the relationship.[22] Five hours and thirty minutes later, Defendant responds, "Just woke up w[here] y[ou] a[t]" and "I passed out call me."[23] When Defendant does not receive a response he texts, "Hey what's up." Thirty minutes later, Defendant texts "I hope your being honest"; and "I hope you know what your saying because that was it. Have a nice life."[24] D.T. tells the Defendant not to talk to her and "I can't talk to no one who can't be there and the ones who caused it[.] I'm dead-ass serious just don't ever talk to me[.] I called oh boy beat me up anyway[.]"[25] D.T.

---

[17] *Id.* at 9.
[18] *Id.* at 9–11.
[19] *Id.* at 11.
[20] *Id.* at 11–12.
[21] *Id.* at 12.
[22] *Id.* at 13.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 13–14.

*United States v. Filoialii*  Case No. 3:21-cr-00052-JMK
Order Adopting Report and Recommendation  Page 5
Case 3:21-cr-00052-JMK-MMS   Document 78   Filed 01/24/23   Page 5 of 11

and Defendant engage in a series of texts calling each other variations of "bitch," and Defendant ending the exchange with "Eat shit and die bitch[.]"[26] Approximately three hours later, Defendant texts "Ok I got you[.]" D.T. responds "I'm reporting g u"; Defendant states "Go ahead you rat fuck"; and D.T. answers "Byep[,] Yep[,] You're done[.]"[27] Three hours and thirty minutes later, D.T. reengages in texting telling Defendant that she is calling law enforcement, "I'm sorry for what you forcing me to do," and that she is making a report. The last message of the exchange is from D.T. that simply says "Sorry[.]"[28] Officers arrived at the hospital approximately ten minutes after the last text message.[29]

Magistrate Judge Scoble found sufficient probable caused based on (1) D.T.'s admission to the hospital for her severe injuries; (2) D.T.'s two interviews; (3) observations made by two separate law enforcement teams; (4) D.T.'s identification of Defendant and details of the events sufficient for a reasonable person to believe Defendant has committed both crimes; (5) D.T.'s demeanor; (6) the verification by law enforcement about the consistency and details of D.T.'s separate interviews; (7) law enforcement's independent computer searches that verified Defendant's name, physical description, vehicle registration, and address; and lastly, (8) D.T.'s severe injuries that correspond to

---

[26] *Id.* at 16–17.
[27] *Id.* at 18.
[28] *Id.*
[29] Dockets 38-1, 38-2.

*United States v. Filoialii* Case No. 3:21-cr-00052-JMK
Order Adopting Report and Recommendation Page 6
Case 3:21-cr-00052-JMK-MMS   Document 78   Filed 01/24/23   Page 6 of 11

her account that are so obvious as to be apparent to an untrained observer.[30] The finding of probable cause did not incorporate the text messages—either in whole, or in part.

Defendant asserts that the messages created a duty for officers to further investigate the text message exchange.[31] The Court finds Defendant's reliance on *Merriman* and *Arpin*[32] unpersuasive due to the abundance of evidence in support of probable cause. *Merriman* and *Arpin* articulate circumstances where specific facts put into question whether an alleged crime occurred.[33] Those circumstances are vastly different than in the instant case. Here, two separate law enforcement teams encounter D.T. with observable and undeniable injuries, consistent with and in her account, and independently investigate and corroborate the alleged identifying details of Defendant. The Court is unpersuaded that the affectionate text messages isolated, or the text messages taken together, create a definitive inconsistency in D.T.'s allegations. The Court concurs with Magistrate Judge Scoble's finding that D.T.'s messages of affection did not call into question the accuracy of D.T.'s report, nor trigger an additional duty to investigate.

Defendant asserts that the messages of affection tended to negate probable cause.[34] Defendant's objection asks the Court to sever these specific messages from the

---

[30] Docket 71 at 20.
[31] Docket 72 at 4–5.
[32] Defendant relies on *Merriman v. Walton,* 856 F.2d 1333, 1335 (9th Cir. 1988), to advance the position that evidence that calls into question the accuracy of a reported crime creates a duty for law enforcement to investigate further before executing an arrest.[32] Defendant further relies on the rule from *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 925 (9th Cir. 2001), that in "establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." Docket 72 at 4.
[33] *See Merriman,* 856 F.2d 1333; *Arpin*, 261 F.3d 912.
[34] Docket 72 at 5–6.

*United States v. Filoialii*     Case No. 3:21-cr-00052-JMK
Order Adopting Report and Recommendation     Page 7
Case 3:21-cr-00052-JMK-MMS    Document 78    Filed 01/24/23    Page 7 of 11

rest of the text thread to support a theory of an alternative perpetrator.[35] The messages of affection express complicated emotions—loneliness, fear, desire, and hope. However, they cannot be divorced from the actual context of the thread. The Court agrees with the Final Report and Recommendation that in the text messages Defendant repeatedly and aggressively discourages D.T. from speaking to anyone who may involve law enforcement.[36] The Court agrees that the content, form, and context of the text messages include threats and attempts to intimidate.[37] The Court notes that Defendant never denies D.T.'s statements that implicate him as the perpetrator of her assault.[38] The Court concurs with Magistrate Judge Scoble's finding that the text messages, taken as a whole, support probable cause.

Defendant asserts that the text messages in contrast to D.T.'s allegations do not demonstrate common relationship dynamics present in domestic violence and are "impossible to reconcile."[39] The text messages are clear on their face as evidence of a volatile and emotionally complicated relationship. The Court concurs with the generalized finding that these messages are consistent with relationship dynamics commonly found undergirding domestic violence crimes.[40]

Lastly, Defendant asserts that Magistrate Judge Scoble overreads the Ninth Circuit's decision in *Peng v. Mei Chin Penghu*,[41] in support of exigent circumstances.

---

[35] *Id.* at 6–7.
[36] Docket 71 at 24.
[37] *Id.*
[38] Docket 31-2 at 9–12.
[39] Docket 72 at 8, *see also id.* at 7.
[40] Docket 71 at 25.
[41] 335 F.3d 970 (9th Cir. 2003).

*United States v. Filoialii* Case No. 3:21-cr-00052-JMK
Order Adopting Report and Recommendation Page 8
Case 3:21-cr-00052-JMK-MMS   Document 78   Filed 01/24/23   Page 8 of 11

*Peng* held "the presence of a factual dispute regarding a victim's complaint at the scene of an alleged domestic disturbance does not defeat probable cause if: (1) the victim's statements are sufficiently definite to establish that a crime has been committed; and (2) the victim's complaint is corroborated by either the surrounding circumstances or other witnesses."[42] Here, Defendant successfully distinguishes *Peng* by noting that D.T. reported to law enforcement days after the incident concluded, in the hospital, without Defendant present. However, *Peng*'s holding remains applicable. Officers interviewed D.T., who articulated alleged specific violent acts by the Defendant. D.T. made her report from a hospital room, with profound, observable injuries that corresponded to her allegations, in a post-surgery setting. Further, D.T. exhibited demeanor and expressed her fear of further violence against her or her mother. The Court agrees with Magistrate Judge Scoble that law enforcement acted with appropriate haste consistent with *Merriman*, *Arpin*, and *Peng*.

The Court does not find error in the Magistrate Judge's finding of probable cause for arrest.

### III. Defendant's Objection Re: Search Warrant Application

Defendant objects to the finding that the omission of the text messages, summarized and quoted above, from the search warrant application was immaterial and did not support a *Franks* hearing. *Franks v. Delaware* permits a defendant to contest the validity of the search warrant.[43] Using a two-prong analysis, the defendant must make a

---

[42] *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979 (9th Cir. 2003).
[43] *Franks v. Delaware*, 438 U.S. 154 (1978).

*United States v. Filoialii* Case No. 3:21-cr-00052-JMK
Order Adopting Report and Recommendation Page 9
Case 3:21-cr-00052-JMK-MMS   Document 78   Filed 01/24/23   Page 9 of 11

"substantial preliminary showing" of (1) a false or misleading statement or omission by the warrant affiant made knowingly, intentionally, or with reckless disregard; and (2) that the statement or omission was material, or necessary, to finding probable cause.[44]

Magistrate Judge Scoble found that Defendant failed to meet the first prong of *Franks*. The Court agrees. The text messages do not alter the course of the investigation, nor present a discrepancy in the alleged facts. The messages demonstrate a volatile relationship and, as evaluated above, support probable cause. The affiant's omission of the text messages lacks the required reckless disregard and the function of being false or misleading.

Further, Magistrate Judge Scoble found the affidavit contained information that law enforcement officers: (1) dispatched to the hospital for an alleged kidnapping and assault; (2) conducted two interviews of D.T.; 3) observed her injuries; (4) detailed the brevity of Defendant and D.T.'s relationship, her difficulty with Defendant's last name and precise address, and her description of his physical features; (5) described Defendant's vehicle registered in his name; and (6) articulated the details of Defendant's arrest.[45] Even if Defendant had met the first prong of *Franks*, the Court concurs with that the omission of the text messages were not material, because they are unnecessary for the finding of probable cause.

---

[44] *Id.* at 155–56; *United States v. Norris*, 942 F.3d 902, 909–10 (9th Cir. 2019).
[45] Docket 71 at 26.

*United States v. Filoialii*  Case No. 3:21-cr-00052-JMK
Order Adopting Report and Recommendation  Page 10
Case 3:21-cr-00052-JMK-MMS   Document 78   Filed 01/24/23   Page 10 of 11

The Court does not find error in the Magistrate Judge's findings in applying *Franks v. Delaware* or finding probable cause as to search warrants 3AN-21-0153SW, 3AN-21-01514SW, and 3AN-21- 01515SW.

## IV. Conclusion

Magistrate Judge Scoble recommended that Defendant's Motion to Suppress at Docket 31 should be denied. Accordingly, the Court adopts the Final Report and Recommendation at Docket 71. The Motion to Suppress at Docket 31 is **DENIED**.

IT IS SO ORDERED this 24th day of January, 2023, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge